# Wagner v. Wagner

*Lewis Steinberg,* for plaintiff.
*Charles Rosamilia,* for respondent.

BROWN, *P.J.,* June 25, 1980—The parties were married on July 20, 1968. They have one child, Philip, Jr., who was born September 13, 1970. They reside at their jointly-owned residence in Shintown, Renovo, Clinton County, Pennsylvania.

The parties have had marital difficulties which resulted in a separation seven years ago and a separation as recently as February 1980 which terminated on May 6, 1980 with a reconciliation. The reconciliation has been unsuccessful as the parties' differences have prevailed. The present petition was filed on June 5, 1980 and it alleges abuse on four specific occasions, to wit: May 30, 1980, June 1, 1980, June 2, 1980, and June 3, 1980. Respondent vigorously denies inflicting any abuse upon plaintiff and the parties' testimony with regard to the incidents in question differ substantially.

With regard to the May 30 incident, it is plaintiff's position that respondent, upon entering the kitchen to eat, found plaintiff's hair rollers on the kitchen table and that he threw them on the floor and became agitated. A verbal altercation ensued at which point respondent allegedly shoved his face into plaintiff's face and pushed her with considerable force as they continued the altercation. She contends at this time that he struck her, although not with his fists or hands, and that he also kicked her and knocked her to the floor. This incident lasted about five minutes and plaintiff retreated to the upstairs whereupon she was followed by respondent. No injuries resulted from this incident which terminated with plaintiff's going to the home of her sister. Respondent's version of this incident is that upon finding plaintiff's hair dryer and curlers at the kitchen table, he moved them to another room following which plaintiff came into the kitchen and told him to keep his hands off of her things and at that point she started slapping him. He claims he lowered his head as a matter of defending himself and that he did not push or butt plaintiff with his head or otherwise strike or kick her.

With regard to the June 1 incident, plaintiff testified that she had returned to the marital home and was sitting in a chair dressed in shorts and a top when respondent came in from working out of doors at which time plaintiff remarked to him that he had a nice tan. She then contends that he came over to her with his genitals exposed and attempted to grab her breasts whereupon she resisted and another argument ensued. Again, no bodily injury was sustained by plaintiff. Respondent's version of this incident is that when he came into the house from out of doors that plaintiff was sitting on a lawn chair dressed only in a housecoat and that the remarks made by her led him to believe that she was desirous of having sexual relations. Since the parties had not had relations for a considerable length of time, respondent testified that he was attempting to accept what he thought was plaintiff's offered invitation to sexual relations. It would therefore be his contention that any contact which took place on June 1, 1980 was a result of his attempts to have sexual intercourse with plaintiff and that these attempts stopped when it became apparent that she did not desire to have sexual relations.

According to plaintiff the June 2 incident occurred when she came out of the house and observed respondent taking speakers out of the parties' automobile. This particular action upset her and she picked up a lawn chair and threw it in respondent's direction although not at him. She then went into an outbuilding located on the premises and began throwing respondent's tools on the floor. He followed her into the tool shed at which time the altercation became somewhat physical and she alleges that he again butted her with his

head causing bodily injury to her. She acknowledged that at some time during the course of this confrontation she may have pushed swinging doors into respondent's head. Respondent's version of this incident is substantially in agreement with plaintiff's with regard to how it began. However, it would be his position that the lawn chair which plaintiff threw was thrown at him whereupon she went into the workshop and began throwing and strewing his tools on the floor. He went into the shed to find out what was happening at which time he claims plaintiff started beating him and also slammed a set of swinging bar doors which hit him on the head. He then acknowledges that he pushed plaintiff into the room with his hands and that she fell at that time. This incident also terminated with plaintiff's leaving the home and going to reside with her sister.

The June 3 incident occurred, according to plaintiff, when she came home and found the doors locked and her key not capable of opening the lock. Respondent apparently had the locks changed after June 2. Plaintiff forced her way into the home and sat down on a chair and waited for respondent to return. Upon his return, respondent told plaintiff to remove herself from the home and when she refused he threatened to physically remove her. The parties' child was present during this occurrence and apparently was upset enough to convince plaintiff to leave the premises. It is respondent's position that with regard to this incident, he did not threaten to throw her out of the house physically but opened the door and asked her to leave under threat of his picking her up and ejecting her from the home. Despite respondent's protestations to the

contrary, it is difficult to construe his actions other than as a threat to physically eject plaintiff from the marital domicile.

Both parties are represented by counsel and both were apparently aware of the ramifications of the Protection From Abuse Act of October 7, 1976, P.L. 1090, 35 P.S. §10181, prior to the institution of these proceedings with respondent having been advised on June 1, 1980 by his attorney not to physically abuse plaintiff because of this statute. Plaintiff's physical stature indicates that she is five feet one inch in height and weighs approximately 123 pounds while respondent is approximately 6 feet in height and weighs 180 pounds.

Respondent argues that plaintiff has not met her burden of proving abuse as defined in 35 P.S. §10182. It is his position that nothing more has been shown than marital disputes in which plaintiff shares equal blame. He further contends that plaintiff is attempting to misuse the Protection From Abuse Act to secure possession of the marital domicile without the occurrence of any act of abuse on his part.

The court's authority to continue the present protection order requires a finding of abuse. Based upon the evidence, nothing is present which shows the existence of attempted or actual serious bodily injury as that term is defined in section 2301 of the Crimes Code, 18 Pa.C.S.A §2301. Thus, the present inquiry must focus on whether respondent has attempted to cause or intentionally, knowingly or recklessly caused bodily injury to plaintiff. Bodily injury as defined in section 2301 of the aforesaid Crimes Code involves the impairment of one's physical condition or substantial pain.

With regard to the May 30 and June 2 incidents, the court concludes that no abuse has been shown.

Plaintiff's participation in starting those incidents and perpetuating them does not allow her to take advantage of the Protection From Abuse Act. Also, the June 1 incident lacks any element of attempted or actual bodily injury being inflicted upon plaintiff. As nearly as the court can read the situation, this was an attempt by respondent to have sexual relations with plaintiff which did not succeed and which did not exceed reasonable bounds in the context of the marital relationship existing between the parties.

The June 3 incident is somewhat different in that it was precipitated by respondent's attempting to exclude plaintiff from the marital domicile by changing the door locks. Since the property was jointly owned, he had no superior legal right to possession, and his attempt to bar her from the home was without legal justification. This wrongful act was accentuated by his threat to remove her physically from the home if she did not voluntarily leave. In the context of the parties' past altercations, such an ultimatum constituted a grave risk that bodily injury would ensue as a result of the ejection. Since plaintiff was under no legal obligation to leave, respondent's actions amounted to a substantial step toward inflicting bodily injury upon plaintiff and therefore was equivalent to an attempt to cause such bodily injury. This inference is supported also by the reactions of the parties' son who was present and made an emotional plea to plaintiff that they leave. Presumably he was able to recognize the imminence of physical contact and bodily injury and sought to avoid such consequences with his plea. In making this judgment, the court is doing so with the realization that the proof of attempt to cause bodily injury must only be by a preponderance of the evidence and not beyond a reasonable

doubt as in criminal cases. Since abuse can be established by the proof of one act, plaintiff has made a sufficient case for relief.

## ORDER

And now, June 25, 1980, based upon the foregoing memorandum, it is hereby ordered that the order entered in this proceedings on June 6, 1980 be continued in effect until June 5, 1981.

BROWN, July 9, 1980—

Re: Respondent's Exceptions to Abuse Order

On June 25, 1980 the court entered an order extending a protection from abuse order entered on June 6, 1980 until June 5, 1981. Respondent has filed exceptions to that order on the basis that it is contrary to the law and the weight of the evidence.

The court's decision was based upon a finding that the respondent attempted to cause bodily injury on June 3, 1980 when he threatened to physically eject plaintiff from the parties' jointly-owned marital residence. In his first specific exception respondent apparently argues that the threat of such an ejection does not constitute an attempt to cause bodily injury. The court believes otherwise, particularly when considering the background circumstances and the definition of "attempt" under the Crimes Code, 18 Pa.C.S.A. § 101 et seq. Section 901 therein provides that a person attempts to commit a criminal act when, with the intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. In the present case, respondent

with no legal justification threatened to physically eject plaintiff from the parties' home and opened the door in preparation for doing that. Considering the fact that the parties had engaged in physical altercations over the preceding several days, such a threat by respondent should have been known by him as likely to incite resistance by plaintiff which in turn would have resulted in bodily injury to her. No further act by respondent was necessary prior to the infliction of bodily injury upon plaintiff, and therefore he was deemed to have taken a substantial step toward the inflicting of such injury. On these facts a case of attempted bodily injury was established by a preponderance of the evidence.

Secondly, respondent argues that the court improperly considered other incidents which were presented in support of the abuse petition after finding that they did not constitute a basis for an abuse order in view of plaintiff's participation in those incidents. Again, the court disagrees with this conclusion and feels that it can properly consider past acts of violence in which the parties engaged regardless of plaintiff's participation in those incidents. By finding that plaintiff participated in those incidents, the court did not find that respondent did not participate in them. Like plaintiff, respondent also could have avoided those incidents and the court was merely finding that both parties were mutually at fault in those particular altercations. The court's consideration of those incidents in supporting a finding that respondent was attempting to cause bodily injury to plaintiff in threatening to eject her was done primarily for the purpose of showing that respondent was not adverse to having physical contact with petitioner which could well have resulted in such injuries.

156

Finally, respondent argues that the hearing in the above case was not held until June 17, 1980, the 11th day following the filing of the petition and original order in violation of the terms of the Protection From Abuse Act which provides for a hearing to be held within ten days or in this case no later than June 16, 1980. The scheduling of this hearing on the 11th day was a result of difficulties with the court's scheduling and should in no way affect the validity of the proceedings. To the extent respondent wished to complain about the holding of the hearing on the 11th day, such an objection should have been taken prior to the hearing itself and his participation in and attendance at that hearing would constitute a waiver of any objection he might have to holding the hearing outside the prescribed statutory period.